FILED
2021 Mar-19  PM 12:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

KELLY COOPER POPE,            )
                             )
        Plaintiff            )
                             )
    vs.                      )    Case No.   4:19-cv-01777-HNJ
                             )
SOCIAL SECURITYADMINISTRATION,  )
COMMISSIONER,                )
                             )
        Defendant            )

## MEMORANDUM OPINION

Plaintiff Kelly Cooper Pope seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability and disability insurance benefits.   The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.

in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11ᵗʰ Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would

2

prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 404.1520; *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* § 404.1520(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(g). If the claimant can perform other work, the evaluator will not

find the claimant disabled.   *See id.* § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"   *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Id.* (citations omitted).   Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Pope, age 55 at the time of the ALJ hearing, protectively filed an application for a period of disability and disability insurance benefits on October 11, 2016, alleging disability as of February 1, 2013. (Tr. 25, 30, 137-38). The Commissioner denied her claim, and Pope timely filed a request for hearing on December 28, 2016. (Tr. 62-76). An Administrative Law Judge ("ALJ") held a hearing on October 9, 2018. (Tr. 30-61). The ALJ issued an opinion on December 4, 2018, denying Pope's claim. (Tr. 16-26).

Applying the five-step sequential process, the ALJ found at step one that Pope did not engage in substantial gainful activity between February 1, 2013, her alleged onset date, and March 31, 2015, her date last insured. (Tr. 21).[2] At step two, the ALJ found Pope had the severe impairments of major depressive disorder and anxiety. (*Id.*). At step three, the ALJ found that Pope's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22).

Next, the ALJ found that Pope exhibited the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Pope] can understand, remember, and carry out simple instructions and tasks for two-hour blocks of time.

---

[2] Pope worked after her alleged onset date, but her work did not rise to the level of substantial gainful activity. (Tr. 21).

[Pope] can occasionally work around the public and can tolerate changes in the workplace that are infrequent and gradually introduced.

(Tr. 23).

At step four, the ALJ determined Pope did not retain the ability to perform her past relevant work as a media director and chief operating officer. (Tr. 24-25). At step five, the ALJ determined Pope could perform a significant number of other jobs in the national economy considering her age, education, work experience, and RFC. (Tr. 25). Accordingly, the ALJ determined that Pope did not suffer a disability, as defined by the Social Security Act, between February 1, 2013, and March 31, 2015. (Tr. 26).

Pope timely requested review of the ALJ's decision. (Tr. 129-36). On June 16, 2019, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 4-6). On October 31, 2019, Pope filed her complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Pope argues that the ALJ failed to properly consider her treating psychiatrist's opinion that she became disabled prior to the last date on which she enjoyed eligibility for disability insurance benefits, and that the ALJ improperly failed to seek a medical opinion to determine the disability onset date. For the reasons discussed below, the undersigned concludes those contentions do not warrant reversal.

6

Claimants seeking disability insurance benefits must demonstrate a disability manifested on or before the last date for which they were insured. *See Moore*, 405 F.3d at 1211. If a claimant becomes disabled after losing insured status, the Commissioner will deny the claim despite a disability. *See McLain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017)(citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979))[3]; *Hughes v. Comm'r of Soc. Sec.*, 486 F. App'x 11, 13 (11th Cir. 2012) ("In order to quality for DIB, an individual must prove that her disability existed prior to the end of her insured status period, and, after insured status is lost, a claim will be denied despite her disability."); *see also* 20 C.F.R. § 404.131.

Pope last enjoyed insured status on March 31, 2015.   (Tr. 21).   The ALJ found that she did not demonstrate disability prior to that date, stating:

> The undersigned acknowledges that the claimant does consistently experience greater than minimal mental impairment restriction, and has done so since the alleged onset date.   The undersigned further acknowledges that the claimant's more recent records suggest an increased degree of mental impairment severity than that shown in the records from the relevant period.   However, the case at hand can only evaluate disability from the alleged onset date of February 1, 2013 through her date last insured of March 31, 2015.

(Tr. 23-24).   The ALJ reasoned that Pope's psychiatric treatment notes from before the date last insured, her reported daily activities, and her self-employment activity

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

between her alleged onset date and the date last insured were not consistent with functionally disabling mental impairments. (Tr. 24).

The ALJ also considered a September 19, 2017, Residual Functional Capacity Questionnaire from Dr. Stuart Tieszen, Pope's treating psychiatrist. Dr. Tieszen indicated that Pope experienced mild limitation of her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. She experienced moderate limitations of her abilities to understand, remember, and carry out repetitive tasks, and to be aware of normal hazards and take appropriate precautions. She experienced marked limitations of her abilities to interact appropriately with the general public; engage in regular daily activities; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; and accept instructions and respond appropriately to criticism from supervisors. She experienced extreme limitations of her abilities to ask simple questions or request assistance; understand, remember, and carry out complex instructions; sustain attention and concentration; perform activities within a schedule and be punctual within customary tolerances; respond appropriately to supervision and/or co-workers; work in coordination with or proximity to others without being distracted by them; respond appropriately to changes in the work setting; and respond appropriately to customary work pressures. She could maintain concentration, persistence, and pace to complete

8

simple job tasks for only up to 30 minutes.

Dr. Tieszen remarked that Pope suffered from post-traumatic stress disorder (PTSD), major depression, panic disorder with severe agoraphobia, excoriation syndrome, chronic pain, and obsessive-compulsive disorder (OCD) for "several years," and she became "totally incapacitated and unable to work" in February 2012.  (Tr. 326-28).  He also signed a statement that the limitations he identified on the Residual Functional Capacity Assessment existed at substantially the same level of severity prior to March 30, 2015, Pope's date last insured.  (Tr. 325).

The ALJ afforded little weight to Dr. Tieszen's opinion.   While the ALJ opined that the limitations Dr. Tieszen assessed were "likely consistent with the claimant's more recent condition," they were "not consistent with the severity of the claimant's conditions during the relevant period . . . .  (Tr. 24).  Pope argues that the ALJ erred by failing to give controlling weight to the treating psychiatrist's assessment of disabling limitations prior to March 30, 2015.

The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists when: (1) the evidence did not bolster the treating physician's opinion; (2) the evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

(citing *Lewis,* 125 F.3d at 1440).   An ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id.* (citing *Lewis,* 125 F.3d at 1440).   An ALJ does not commit reversible error when (1) he articulates specific reasons for declining to give the treating physician's opinion controlling weight, and (2) substantial evidence supports these findings. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11ᵗʰ Cir. 2005) (*per curiam*).

To determine the weight given to any medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional.   20 C.F.R. §404.1527(c); *see Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11ᵗʰ Cir. 2011) (the ALJ will give more weight to the medical opinions of a source who has examined the plaintiff and opinions that are supported by medical signs and findings and are consistent with the overall "record as a whole").   The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.   *Hearn v. Comm'r of Soc. Sec.*, 619 F. App'x 892, 895 (11ᵗʰ Cir. 2015) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11ᵗʰ Cir. 1983)).

Moreover, the ALJ need not credit a physician's opinion about his patient's ability to work, as such opinions usurp the Commissioner's administrative function.

> According to 20 C.F.R. § 404.1527(d), the determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner.   Section (d)(2) provides that although the Commissioner will consider opinions from medical sources on issues such as the RFC and the application of vocational factors, the final responsibility for deciding those issues is reserved to the Commissioner.

*Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017).   That is, "the task of determining a claimant's . . . ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

Here, good cause exists to support the ALJ's decision to reject Dr. Tieszen's opinion that Pope experienced disabling impairments before her date last insured.   The ALJ reasoned that the medical record and Pope's daily activities did not support such severe impairments prior to the date last insured, and substantial evidence supports that conclusion.   (Tr. 24).

During a February 1, 2012, treatment visit to Dr. Tieszen, Pope reported increased stress from a domestic court hearing, but she had recently attended her son's graduation.   She experienced pain all over her body, especially in her left arm, calf and leg.   She lost her job the previous October, and she intended to start a new job after l8 months of unemployment.   However, Dr. Tieszen opined Pope could not work due to pain and weakness.   During the clinical examination, Pope demonstrated appropriate

appearance, constricted affect, depressed and anxious mood, decreased concentration, normal cognition and psychotic status, and no suicidal ideations.   (Tr. 273).[4]

On February 22, 2012, Pope reported decreased muscle and joint pain with medication, but her depression had not improved.   She reported her work was very busy, but she did not feel very functional.   She demonstrated appropriate appearance; full affect; depressed, anxious, and emotional mood; impaired concentration; normal cognition and psychotic symptoms; and no suicidal ideation.   She presented as tearful and upset.   (Tr. 270).

On October 3, 2012, Pope reported daily anxiety but improvement in her depression symptoms.   She had changed her medications, but she could only work part-time due to stress and anxiety.   During the clinical examination, Pope demonstrated appropriate appearance, full affect, anxious mood, fluctuating concentration, normal cognition and psychotic symptoms, and no suicidal ideation. (Tr. 271).

On April 15, 2013, Pope reported significant benefit from her pain medications, but she still experienced some bouts with depression, although she could rise out of bed.   Her job allowed her to work flexible, part-time hours.   The clinical examination

---

[4] Dr. Tieszen hand-wrote his treatment notes, and the court could not read all of his statements.

revealed appropriate appearance; full affect; anxious mood; normal cognition, concentration, and psychotic symptoms; and no suicidal ideation.  (Tr. 268).

On September 25, 2013, Pope reported her medications helped with pain, but depression remained a daily fight.  She could not keep up with the demands of her life. Her pre-menopausal state presented problems, and she felt exhausted and in pain.  She also reported some marital issues.  The clinical examination revealed appropriate appearance, constricted affect, anxious and tearful mood, decreased concentration, normal cognition and psychotic symptoms, and no suicidal ideation.  (Tr. 269).

On March 17, 2014, Pope reported medication issues, pain, arthritis, and complications from 13 years in menopause.  She demonstrated a casual, cooperative, well-groomed, and engaging appearance; good eye contact; normal psychomotor behavior; normal, spontaneous, and coherent speech; anxious mood; normal gait; logical, organized, and goal-directed thought processes; no disturbances of thought content; alert cognition; intact memory; good attention and concentration; good insight and judgment; intact language; and good fund of knowledge.  Overall, she presented with increased symptoms.  (Tr. 267).

On September 28, 2014, Pope complained of agoraphobia and social problems. She performed her work on a project basis.  She reported problems with boundaries and helicopter parenting.  The clinical examination revealed a casual, cooperative, well-groomed, engaged appearance; normal psychomotor function; normal, spontaneous,

13

and coherent speech; anxious mood; normal gait; logical, organized, goal-directed thought processes; no thought content disturbances; alert and oriented cognition; intact memory; good attention and concentration; good insight and judgment; intact language; and good fund of knowledge.   She reported feeling upset over moving to a new location after 26 years.   (Tr. 264).

On December 17, 2014, Pope reported increased sleep and appetite.   She felt barely able to function after her best friend's daughter died, but Xanax helped with those symptoms.   The clinical examination revealed a casual, cooperative, well-groomed, engaging appearance, with good eye contact; normal psychomotor function; normal, spontaneous, and coherent speech; depressed mood; normal gait; logical, organized, and goal-directed thought processes; no thought content disturbances; alert cognition; full orientation; intact memory; good attention and concentration; good insight and judgment; intact language; and good fund of knowledge.   (Tr. 265).

On March 17, 2015, Pope reported battling daily depression, and her pain felt worse after changing her medications.   The clinical examination revealed a casual, cooperative, well-groomed, engaging appearance, with good eye contact; normal psychomotor function; limited but normal speech with some slurring; depressed, dysthymic mood; anxious affect; normal gait; logical, organized, goal-directed thought processes; some obsessions, but otherwise normal thought content; alert cognition; intact memory; poor concentration; good insight and judgment; intact language; and

14

good fund of knowledge.   Pope demonstrated complete anhedonia, and she had no libido.   Dr. Tieszen recommended cognitive therapy.   (Tr. 262).

As the ALJ identified, despite Pope's reports of depressive and anxious symptoms, Dr. Tieszen's treatment notes from the relevant period consistently reflect normal findings regarding memory, insight, judgment, cognition, speech, and psychomotor function.   (Tr. 24).   Although Dr. Tieszen documented problems with attention and concentration on some occasions, on other occasions he noted normal attention and concentration.   Therefore, the attention and concentration impairments did not persist for a sustained period.

Pope no doubt experienced symptoms of depression and anxiety prior to her date last insured, but based on Dr. Tieszen's treatment records, those symptoms would not reasonably cause the marked and extreme functional limitations he assessed.   For example, Dr. Tieszen assessed Pope with marked limitation of her ability to understand, remember, and carry out simple instructions, and extreme limitation of her ability to understand, remember, and carry out complex instructions, but his treatment notes consistently indicate good memory, insight, judgment, and cognition, and only variously impaired attention and concentration.   He assessed marked limitation of the ability to sustain an ordinary routine and extreme limitation of the ability to sustain attention and concentration, yet his treatment notes only sometimes documented impairments in attention and concentration, and they consistently documented good cognition. He

15

assessed marked ability to make simple work-related decisions, yet his treatment notes consistently indicated good judgment, insight, and cognition.

The ALJ reasoned that Pope's "testified-to daily activities and her self-employment earnings obtained after the alleged onset date but prior to the date last insured suggest less than disabling restriction on a consistent basis."  (Tr. 24).  The ALJ found Pope could occasionally shop in stores, perform daily household chores, and attend a bible study.  (Tr. 22).  He also determined she "performed significant work after the alleged onset date, including self-reported earnings in 2013, 2014, and 2015 . . . ."  (Tr. 21).  Those conclusions constituted permissible considerations, and Pope has not challenged the ALJ's evaluation of her daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ may consider a claimant's daily activities in evaluating the limiting effects of her impairments); 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").  Moreover, the record supports the ALJ's findings.

For these reasons, the court concludes the ALJ did not err by affording little weight to Dr. Tieszen's opinion that Pope manifested a disability prior to her date last insured.

Pope argues the ALJ should have sought clarification from Dr. Tieszen before rejecting his opinion.  According to Social Security regulations, an ALJ should

recontact a claimant's treating physician if the evidence in the record "does not contain all the information [the ALJ needs] to make [his] determination or decision." 20 C.F.R. § 404.1520b(b).   However, an ALJ bears no responsibility to recontact medical sources when the record already contains substantial evidence to support a decision.   *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).   Because the ALJ relied upon substantial evidence contradicting Dr. Tieszen's opinion, he maintained no duty to seek clarification from Dr. Tieszen.

Pope also argues that SSR 83-20 required the ALJ to consult a medical expert or order a consultative medical evaluation to determine her disability onset date.   The pertinent portions of that ruling state:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.   Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available.   In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

> . . . .

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available.   When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy.   However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

17

. . . .

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor *when onset must be inferred*.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

. . . .

The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition).  The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death.   Convincing rationale must be given for the date selected.

SSR 83-20, at *2-3 (emphasis added).[5]

The Eleventh Circuit has held in three unpublished decisions that SSR 83-20 requires a medical consultation only when the ALJ has already found a disability existed, but lacks sufficient evidence to determine the onset date of that disability.   Most

---

[5] "Social Security Ruling 18-01p rescinded and replaced the relevant parts of SSR 83-20 as of October 2, 2018. SSR 18-01p. Social Security Ruling 18-01p does not apply retroactively, however, so we limit our consideration to the ALJ's application of SSR 83-20."   *Castleman v. Comm'r, Soc. Sec. Admin,* 824 F. App'x 927, 929 n.2 (11th Cir. 2020) (citing SSR 18-01p(III)).

recently, in *Castleman v. Comm'r, Soc. Sec. Admin.*, 824 F. App'x 927 (11th Cir. 2020), the

Court held:

> The district court correctly determined that the Commissioner's decision here did not contravene SSR 83-20, because (1) the record before the ALJ contained adequate unambiguous medical evidence from which to determine whether Castleman was disabled, and (2) based on that evidence, the ALJ determined that Castleman was not disabled between her alleged onset date and the date that she was last insured.  The plain language of the Ruling indicates that it applies when the claimant has shown that she is disabled, or that she was disabled for some period of time before her "last insured" date, but the medical evidence does not clearly indicate when her disability began.  Because sufficient available medical evidence supports the ALJ's determination that Castleman was not disabled at any time between her claimed onset date and the date that she was last insured, SSR 83-20 does not apply. *See, e.g.*, *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (concluding that SSR 83-20 did not apply because "[w]ith no finding of disability, there was no need to determine an onset date"); *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (similar).

*Castleman,* 824 F. App'x at 929; *see also Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x

936, 939 (11th Cir. 2014) ("The plain language of SSR 83-20 indicates that it is applicable

only after there has been a finding of disability and it is then necessary to determine

when the disability began."); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th

Cir. 2010) ("We conclude that the ALJ did not contravene SSR 83-20 because the ALJ

ultimately found that Klawinski was not disabled, and SSR 83-20 only required the ALJ

to obtain a medical expert in certain instances to determine a disability onset date after

a finding of disability.").

This court follows the consistent guidance of the Eleventh Circuit's non-binding but highly persuasive unpublished opjinions, and finds that SSR 83-20 did not require a medical consultation because the ALJ determined no disability existed, and sufficient medical evidence existed to support that decision.   As the Eleventh Circuit stated in *Klawinski*:

> There are two situations where [SSR 83-20] suggests the need for the ALJ to call a medical advisor during a hearing: (1) where it may be possible, based on medical evidence, to "reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination"; and (2) in terms of a malignant neoplastic disease, "[t]o establish onset of disability prior to the time a malignancy is first demonstrated to be inoperable or beyond control by other modes of therapy." *Id.*

*Klawinski*, 391 F. App'x at 776.   Here, no malignancy existed, and Pope began receiving treatment from Dr. Tieszen years before her alleged onset date of February 1, 2013. Thus, there existed "recorded medical examinations" prior to the disability onset date, and those medical records, as discussed above, constitute adequate evidence to support the ALJ's finding of no disability prior to the date last insured.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 19th day of March, 2021.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE